UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PETER WILCZEK,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**PHILLIPS 66 COMPANY, BROCK INDUSTRIAL SERVICES, LLC, CORPORATION SERVICES COMPANY, et al.,**<br><br>　　　　**Defendants.** | Civ. No. 19-17374 (KM-JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　The plaintiff, Peter Wilczek, sues for injuries sustained in the course of his employment. Defendant Phillips 66 Company ("Phillips 66") owns the property where the accident occurred. Wilczek was employed, however, by a subcontractor, defendant Brock Industrial Services, LLC ("Brock"), which controlled the means and methods of Wilczek's work. Now Phillips 66 moves for summary judgment, arguing that Brock, not itself, is liable.

　　Despite multiple extensions, no opposition has been filed. As required by law (*see* Section II.B, *infra*), I have not automatically granted the motion as unopposed, but reviewed the record to determine whether it presents a triable issue of fact. Finding none, and for the reasons stated herein, I have GRANTED the motion and awarded summary judgment to Phillips 66.[1]

---

[1]　Certain citations to the record will be abbreviated as follows:

　　DE __ = Numbered items on the docket of this case.

　　Def. Brf. = Brief in support of Phillips 66 motion for summary judgment (DE 52 at 3)

I.  **Procedural Background**

This action, filed in state court, was removed to this Court on August 29, 2019. The Third Amended Complaint (DE 26) is the currently operative pleading. The Magistrate Judge ordered the matter to be referred to arbitration following fact discovery and exchange of expert reports. (DE 42, 43) Counsel for Mr. Wilczek rejected the arbitrator's confidential findings and requested trial de novo. (DE 45)

On January 27, 2023, defendant Phillips 66 filed its motion for summary judgment (DE 52). The return date was automatically set for February 21, 2023, and then reset to March 6, 2023, to reflect an earlier scheduling order.

On February 16, 2023, Mr. Bensulock, who is counsel for Mr. Wilczek, wrote the court to confirm the March 6, 2023 return date. Counsel's letter noted, however, that counsel for Phillips 66 had

---

DSMF = Defendant Phillips 66 Statement of Uncontested Material Facts (DE 52 at 23)

Ex. __ = Defendant Phillips 66 lettered exhibits A-G (DE 52-2), comprising:

    Wilczek Interrog. = Plaintiff interrogatory answers, attached as Ex. B (DE 52-2 at 8)

    Wilczek Dep. = Transcript of deposition of plaintiff, attached as Ex. C (DE 52-2 at 19)

    Austin Dep. = Transcript of deposition of Randy Austin, attached as Ex. D (DE 52-2 at 56)

    Miller Rpt. = Expert report of Engineer Raymond Miller, attached as Ex. E (DE 52-2 at 89)

    J. Toto Rpt. = Expert report of Engineer J. Toto, attached as Ex. F (DE 52-2 at 115)

    Service Agreement = Service Agreement and related materials, attached as Ex. G (DE 52-2 at 123)

> … consented to give us another week for our response to the motion and in return we will consent for an additional week for defense counsel replies.
>
> I am requesting the Court to adjourn and amend the return date in the website for an extra week till March 13, 2023.

(DE 53) On February 21, 2023, Magistrate Judge Clark so-ordered that extension, and the return date of the summary judgment motion was reset to March 13, 2023. (DE 54 and entry following).

On February 27, 2023, plaintiff's counsel wrote to the Court a second time, requesting an additional week:

> Our response to the Summary Judgment Motion is currently scheduled for February 28, 2023.
>
> Brendon Johnson, attorney for defendant, Phillips 66, consented to give us another week for our response and in return we will consent for an additional week for defense counsel replies.
>
> I am requesting the Court to adjourn the hearing date to March 20, 2023, plaintiff's response to March 7, 2023 and defendants' replies to March 14, 2023.

(DE 55) On February 28, 2023, the Court again so-ordered the requested extension and set the return date for March 20, 2023. (DE 56)

On March 17, 2023, plaintiff's counsel wrote to the Court a third time, again requesting an additional week:

> Our response to the Summary Judgment Motion was scheduled for March 7, 2023.
>
> Attorney for defendant, Phillips 66, Brendon Johnson, consented to give us till Monday, March 20, 2023 for our response and in return we will consent for an additional week for defense counsel replies.
>
> I am requesting the Court to adjourn the hearing date to April 4, 2023, plaintiff's response to March 20, 2023 and defendants' replies to March 27, 2023.

(DE 57) On March 20, 2023, Magistrate Judge James B. Clark, III so-ordered the requested extension and set the return date for April 4, 2023. (DE 58)

After three extensions, then, the plaintiff's responding brief was due March 20, 2023. No brief was received, and no further extension was requested.

On April 13, 2023, counsel for Phillips 66 wrote to the Court pointing out that, after being granted three extensions, the plaintiff still had not responded to the summary judgment motion. He requested that the motion be considered unopposed. (DE 59) To this letter, filed over a month ago, there has likewise been no response.

I therefore have no choice but to rule on the motion as presented.

## II.   Legal standard

### A.   Ordinary summary judgment standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates

a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995) ("[T]he nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55, n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### B. Procedure where motion is unopposed

Where, as here, a party fails to address the other party's properly supported assertions of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56(a). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary

5

judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

### III.   Discussion

Phillips 66 is the owner of premises known as the Bayway Refinery in Linden, New Jersey. The plaintiff, Mr. Wilczek, alleges that he sustained an injury to his cervical spine when working on those premises on March 4, 2017. (DSMF ¶ 1) Specifically, he suffered a fall when working as part of a crew building scaffolding inside a large furnace as part of a so-called Turnaround Project. (DSMF ¶ 2) At the time, Wilczek was employed by Brock. Phillips 66 asserts that as property owner and general contractor it was entitled to rely on Brock, its subcontractor, to ensure Wilczek's safety.

### A.   Rule of non-liability for a general contractor/property owner

Generally speaking, a tort plaintiff such as Mr. Wilczek must establish (1) that the defendants owed the plaintiff a duty of care; (2) that the defendants breached that duty; (3) proximate causation between the breach and the injuries sustained by the plaintiff; and (4) damages suffered by the plaintiff. *Conklin v. Hannoch Weisman*, 145 N.J. 395, 416 (1996). Phillips 66 here focuses on the first element, arguing that it did not owe Brock's employee Wilczek a duty of care.

An occupier of land or general contractor is "not responsible for harm which occurs to an employee as a result of the very work which that employee was hired to perform" on-site *Dawson v. Bunker Hill Plaza Assocs.*, 289 N.J. Super. 309, 318 (App. Div.), *certif. denied*, 146 N.J. 569 (1996). More specifically, "[a] 'general contractor' is not liable for injuries to a subcontractor's

6

employees absent control over the job location or direction of the manner in which the delegated tasks are carried out." *Muhammad v. N.J. Transit*, 176 N.J. 185, 198-99 (2003). A competent "independent contractor and [its] employees are sufficiently skilled to recognize the danger associated with their task and adjust their methods according to ensure their own safety," *Tarabokia v. Structure Tone*, 429 N.J. Super. 103, 113-114 (App. Div. 2012), or so the general contractor is entitled to assume, absent contrary evidence. So, in general, a general contractor enjoys "broad immunity from liability for injuries to an employee of a subcontractor resulting from either the condition of the premises or the manner in which the hired work is performed." *Id.* at 112, 113 (citing *Muhammad*, 176 N.J. at 198-99). Accordingly, it has long been held that

> [a] general contractor who sublets work, relinquishing the right of control and direction over the manner in which the work shall be done, and of the employees engaged in doing it, and exercising only such general superintendence as is necessary to see that the subcontractor performs the contract, ordinarily has no duty to protect an employee of the subcontractor from the very hazards that arise from the doing of the contract work itself; the subcontractor and not the general contractor has the duty to guard his employees against such dangers.

*Trecartin v. Mahony-Troast Const. Co.*, 18 N.J. Super. 380, 386 (App. Div. 1952).

The facts here fit the subcontractor scenario described in the cited cases.

Wilczek was employed by Brock, a qualified subcontractor hired by Phillips 66 to perform certain work. (DSMF ¶¶ 1, 5) By contract, Brock was responsible for onsite safety and training of its employees. (*Id.* ¶ 6) Brock was an imbedded contractor at Bayway Refinery, both before and after the accident in suit. (*Id.* ¶ 21) Brock had exclusive control over the work it was hired to do, and would periodically report on the progress of the scaffolding. (*Id.* ¶ 19) Phillips 66 relied on Brock's expertise in construction, inspection, and maintenance of the scaffolding. It had no control over the scaffolding or the means and methods of building it. (*Id.* ¶¶ 22, 24) That responsibility lay with

7

Brock. (*Id.* ¶ 26) Brock was responsible for training its employees and ensuring they were qualified. (Austin Dep. T78:1–9)

It is true that an employee of Phillips 66, Randy Austin, had general responsibility for safety at the plant, and that Brock employees would sometimes attend safety presentations (although Austin could not recall any such meeting specifically on the subject of scaffolding). (*Id.* ¶¶ 15, 16) Phillips 66 employed safety coordinators, but these employees did not inspect scaffolding.  (*Id.* ¶ 17)

The work being done by Mr. Wilczek on the day of the accident was the very work for which his employer, Brock, was engaged as subcontractor. (Wilczek Dep. T43:11–25) Wilczek was passing scaffolding materials up the scaffolding to the level above him when the Brock Industrial employees had to move to the next scaffolding tower. (*Id.* T43:11 to 45:23). Wilczek acknowledged that he "climbed between the scaffolding towers between the scaffolding pipes or braces" and while doing so, struck his head and fell. (*Id.*) All of the safety equipment worn by Wilczek was provided by his employer, Brock Industrial. (*Id.* T20:9-20) The scaffolding materials were likewise provided by Brock. (*Id.* T43:11–45:23)

Under its contract with Phillips 66, Brock was required to have safety inspectors, to employ OSHA competent workers, to censure compliance with all health and safety standards as well as all federal and state laws, and to provide regular safety training to its employees. (Ex. G; see also Master Service Agreement, quoted at Ex. E, DE 52-2 at 99–100) The Service Order for this particular job specified that Brock was authorized "to furnish labor, tools, materials, equipment, transportation, and supervision, to provide the following work: Scaffolding support . . . ." (quoted at Ex. E, DE 52-2 at 101). Mr. Wilczek acknowledged that he personally was an experienced, competent person with respect to scaffolding safety. (DSMF ¶ 9)

In short, these facts establish that Mr. Wilczek was the employee of Brock, not Phillips 66, and that he was doing work taken on and supervised by

8

Brock, which controlled the means and manner of work and had responsibility for safety conditions. The general rule of non-liability would therefore absolve Phillips 66, unless some exception applies.

### B. Exceptions to the rule of non-liability

*Retained Control Exception.* Under the "retained control" exception, a subcontractor's principal may be liable if it exerts control over the "means and manner by which an independent contractor performs [its] services." *Basil v. Wolf*, 193 N.J. 38, 63-64 (2007). Relevant factors include "reservation of control over the equipment to be used, the manner or method of doing the work, or direction of the employees of the independent contractor." *Mavrikidis v. Petullo*, 153 N.J. 117, 135 (1998). "To impose liability upon the landowner, there must be evidence of physical control over the work site; mere superintendence to ensure that the contractor is abiding by the agreement does not suffice." *Pfenninger v. Hunterdon Cent. Reg'l High Sch.*, 167 N.J. 230, 254 (2001).

This exception is in many respects simply the negation of the facts underlying the application of the usual rule of non-liability. The facts, as outlined in the preceding section III.A, establish that there is no triable issue as to the control of the means and manner of work or the retained control exception, which does not apply.

*Incompetent Contractor Exception.* A principal may also be held liable under a negligent hiring theory. Such liability has three essential elements: (1) that the contractor was, in fact, incompetent or unskilled to perform the job for which it was hired; (2) that the harm that resulted arose out of that incompetence; and (3) that the principal knew or should have known of the incompetence. *Basil*, 193 N.J. at 68.

Phillips 66 vetted Brock in advance to ensure that it operated in accordance with site guidelines and OSHA regulations. (Austin Dep. at T53:24-54:3) As noted above, under its contract with Phillips 66, Brock was required to have safety inspectors, to employ OSHA competent workers, to censure compliance with all health and safety standards as well as all federal and state

9

laws, and to provide regular safety training to its employees. (Ex. G; *see also* Master Service Agreement, quoted at Ex. E, DE 52-2 at 99–100) Wilczek acknowledged that he personally was an experienced, competent person with respect to scaffolding safety. (DSMF ¶ 9)

There is no sufficient evidence to create a triable issue as to the injuries having resulted from Phillips 66 having negligently hired an incompetent subcontractor.

*Nuisance per se.* The third and last potential exception to the rule of non-liability applies when the relevant activity constitutes a nuisance *per se.* That doctrine applies narrowly to an activity that "(a) necessarily involves a serious risk of harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage.'" *Majestic Realty Assocs., Inc.*, 30 N.J. at 436. There is no indication that scaffolding work of this kind has been legally defined or would appropriately be described as a nuisance *per se.*

## IV. Conclusion

For the reasons set forth above, the motion of defendant Phillips 66 for summary judgment (DE 52) is GRANTED as to all claims. An appropriate order will issue.

Dated: May 25, 2023

/s/ Kevin McNulty

**Kevin McNulty**
**United States District Judge**